**MATTHEW R. SCHULTZ (SBN 220641)**
 *mschultz@tgsdlaw.com*
**TREPEL GREENFIELD SULLIVAN & DRAA LLP**
150 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 283-1776
Facsimile: (415) 283-1777

**BRYAN G. HARRISON (*Admitted Pro Hac Vice*)**
 *bgh@mmmlaw.com*
**MORRIS, MANNING & MARTIN, LLP**
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
Telephone: (404) 233-7000
Facsimile: (404) 365-9532

Attorneys for Plaintiff
Optimum Power Solutions LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| OPTIMUM POWER SOLUTIONS LLC,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC.<br><br>Defendant. | Case No. 3:11-cv-01509-SI<br><br>**PLAINTIFF'S OPENING CLAIM CONSTRUCTION BRIEF**<br><br>Date: May 23, 2012<br>Time: 9:00 AM<br>Place: 450 Golden Gate Ave,<br>Courtroom 10<br>Judge: Hon. Susan Illston |

# TABLE OF CONTENTS

I PRELIMINARY STATEMENT .................................................................................. 1

II POINTS AND AUTHORITIES ................................................................................. 2

    A.    Legal Standards Applicable to Claim Construction. ...................................... 2

    B.    The Disputed Claim Constructions. ............................................................... 3

        1.    The Preamble's Dynamic Power Management Device. ................................................................................................ 3

            (a)    The Preambles' Use of the Phrase "Dynamic Power Management Device" Is Not an Additional Limitation of the Claims ....................... 3

            (b)    Defendant's Construction of "Dynamic Power Management Device" as Requiring Varying Power Delivered Only to the Memory Integrated Circuit Is Without Support ...................................................................... 5

        2.    The "Memory Integrated Circuit" Limitation. ................................... 5

        3.    The "Power Control Means" Limitation. ........................................... 6

        4.    The "Logic Control Means" Limitation. ............................................ 7

        5.    The "Power Supply" Limitation. ........................................................ 9

        6.    The "Variable Voltage Level" Limitation. ....................................... 10

        7.    The "Variable Power Supply" Limitation. ....................................... 12

III CONCLUSION ......................................................................................................... 13

i

Plaintiff's Opening Claim Construction Brief
Case No. 3:11-cv-01509-SI

## TABLE OF AUTHORITIES

**CASES**

Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc. 98 F.3d 1563 (Fed. Cir. 1996) ...................................................... 4

Bicon, Inc. v. Straumann Co., 441 F.3d 945 (Fed. Cir. 2006) ............................................ 4

Corning Glass Works v. Sumitomo Elec. U.S.A., Inc., 868 F.2d 1251 (Fed. Cir. 1989) ................................................................................................... 4

i4i Ltd. P'ship v. Microsoft Corp., 598 F.3d 831 (Fed. Cir. 2010) ................................. 2

In re Bulloch, 604 F.2d 1362 (CCPA 1979) ..................................................................... 4

In re Paulsen, 30 F.3d 1475 (Fed. Cir. 1994) ................................................................... 4

In re Stencel, 828 F.2d 751, 754 (Fed. Cir. 1987) ........................................................... 4

Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861 (Fed. Cir. 1985) ........................................ 4

Northrop Grumman Corp. *v. Intel Corp.*, 325 F.3d 1346 (Fed. Cir. 2003) ................................................................................................... 3

Nystrom v. Trex Co., 424 F.3d 1136 (Fed. Cir. 2005) ....................................................... 2

Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005) ................................................... 2

Rowe v. Dror, 112 F.3d 473 (Fed. Cir. 1997) .................................................................. 5

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, (Fed. Cir. 2001) ............................................................................... 2

Texas Digital Systems, Inc. *v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), *cert. denied*, 538 U.S. 1058 (2003) ....................................................... 3

Vita-Mix Corp. v. Basic Holding, Inc., 581 F.3d 1317 (Fed. Cir. 2009) ......................... 4

**STATUTES**

35 U.S.C. § 112 .................................................................................................... 2, 6, 8

Pursuant to Patent Local Rule ("Patent L.R.") 4-5 of the Northern District of California, Plaintiff Optimum Power Solutions LLC ("Optimum Power") files this its Opening Claim Construction Brief, providing the Court with points and authorities in support of Optimum Power's proposed claim constructions for U.S. Pat. No. 5,781,784 (the "'784 Patent").[1]

I **PRELIMINARY STATEMENT**

The '784 Patent describes a novel method that dynamically manages power supplied to solid state memory. Among other things, the '784 Patent discloses a power management device and related logic control circuitry that supplies variable voltage to solid state memory devices such that the solid state memory receives sufficient power to maintain memory information during periods of no activity, *i.e.*, quiescent periods and an increased level of power during periods of data access activity or memory access periods, thereby reducing substantially the power consumption of solid state memory devices.

Pursuant to Patent L.R. 4-3(b), Optimum Power and Apple proposed constructions for each of the following disputed claim terms in the '784 Patent:

- "dynamic power management device";
- "power control means";
- "memory integrated circuit" (also apparently referred to as "integrated memory circuit");
- "logic control means";
- "wherein the power control means supply power to said memory integrated circuit";
- "variable voltage level";
- "the power supplied at the first level is sufficient to preserve information… and the

---

[1] Optimum Power has filed contemporaneously herewith Exhibits containing the '784 Patent and other intrinsic references cited by the parties in their Patent L.R. 4-3 Statement. *See* Decl. of M. Schultz ("Schultz Decl.") Exs. A - C.

power supplied at the second level is sufficient to read and write information."

Optimum Power and Apple agree that the claim terms "power control means" and "logic control means" are governed by 35 U.S.C. § 112, ¶ 6.

## II **POINTS AND AUTHORITIES**

A.  Legal Standards Applicable to Claim Construction.

This Court is well aware of applicable claim construction law. Claim construction is a question of law for the Court. *Nystrom v. Trex Co.*, 424 F.3d 1136, 1141 (Fed. Cir. 2005). A claim term is to be given "the meaning it would have to a person of ordinary skill in the art at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc). Disputed terms are to be interpreted in light of the claims themselves, the patent specification, and the prosecution history. *See id.* at 1312-14. While extrinsic evidence "may be useful to the court, . . . it is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence." *Id.* at 1319.

Because the Court is familiar with the law of claim construction, Optimum Power merely highlights the two legal principles that are most relevant to the claim construction issues in this matter:

*First*, it is improper to import a limitation from the specific embodiments described in the specification into the claims. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (cardinal sins of patent law to read a limitation from the written description into the claims) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc*., 242 F.3d 1337, 1340 (Fed. Cir. 2001)); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 842 (Fed. Cir. 2010) (same).

*Second*, the corresponding structure for a means-plus-function claim governed by 35 U.S.C. § 112, ¶ 6 is limited strictly to the structure in the specification that is necessary to fully perform the identified function. *See, e.g., Northrop Grumman Corp. v. Intel Corp.*, 325 F.3d 1346 (Fed. Cir. 2003) (court may not import into the claim features that are unnecessary to perform the claimed function—features that do not perform the recited function do not constitute corresponding structure and thus do not serve as claim limitations); *Texas Digital Systems, Inc. v. Telegenix, Inc.*, 308 F.3d 1193 (Fed. Cir. 2002), cert. denied, 538 U.S. 1058 (2003) (same).

2

B. The Disputed Claim Constructions.

The parties' disputed claim constructions are set forth in Exhibit A to the parties' Patent L.R. 4-3 Statement, filed December 2, 2011. [Dkt. #168-1]. As explained more fully below, Optimum Power's proposed constructions are well-founded in the specification and file history of the '784 patent.

1. The Preamble's Dynamic Power Management Device.

| No.[2] | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 1 | dynamic power management device (claims 1, 19, and 23) | Optimum Power does not believe that the preambles to claims 1, 19, and 23 are limiting. However, to the extent that the Court determines to construe these preambles, Optimum Power proposes: a device that supplies variable power to the solid state memory | a device that varies the power level supplied to the memory integrated circuit without varying the power level supplied to the rest of the system components |

Defendant's efforts to incorporate the preambles' to Claims 1, 19, and 23 of the '784 Patent use of the term "dynamic power management device" into a limitation of the claim raises two issues. The initial, threshold issue is whether this phrase in the preambles of the claims is a limitation to those claims. If the Court determines the preamble is, in fact, a limitation, then it must determine whether the term dynamic power management device requires, as proposed in Defendant Apple's construction.

(a) The Preambles' Use of the Phrase "Dynamic Power Management Device" Is Not an Additional Limitation of the Claims

As an initial matter, it is clear that the phrase "dynamic power management device" in the preambles of claims 1, 19, and 23 is not a claim limitation. It is well-settled that the preamble limits the claims only when it distinguishes the use of the claimed article from the prior art, *see, e.g.*, *Vita-*

---

[2] The "No." column refers to the number assigned to the particular term in the parties' Joint Claim Construction Statement (Dkt #168-1).

3

Plaintiff's Opening Claim Construction Brief
Case No. 3:11-cv-01509-SI

*Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1323-24 (Fed. Cir. 2009), or when it contains language that is essential to the description of the invention, *see, e.g., In re Paulsen*, 30 F.3d 1475, 1479 (Fed. Cir. 1994); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 866 (Fed. Cir. 1985) ("[a]lthough it appears in the preamble of the '012 patent claims, the term 'anaerobic' breathes life and meaning into the claims and, hence, is a necessary limitation to them."); *In re Bulloch*, 604 F.2d 1362, 1365 (CCPA 1979) ("[t]he introductory claim language 'stable color developer concentrate' is more than a mere statement of purpose; and that language is essential to particularly point out the invention defined by the claims.").

In *Applied Materials, Inc. v. Advanced Semiconductor Materials America, Inc.* the Federal Circuit explained:

> Whether a preamble stating the purpose and context of the invention constitutes a limitation of the claimed process is determined on the facts of each case in light of the overall form of the claim, and the invention as described in the specification and illuminated in the prosecution history.

98 F.3d 1563, 1572-73 (Fed. Cir. 1996). *See also, e.g., Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) ("[W]hether to treat a preamble as a claim limitation is determined on the facts of each case in light of the claim as a whole and the invention described in the patent."); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) ("The effect preamble language should be given can be resolved only on review of the entirety of the patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim."); *In re Stencel*, 828 F.2d 751, 754 (Fed. Cir. 1987) ("Whether a preamble of intended purpose constitutes a limitation to the claims is, as has long been established, a matter to be determined on the facts of each case in view of the claimed invention as a whole").

Where, as here, the limitations of the claim define a structurally complete invention, importing additional limitations from the preamble is improper. *Rowe v. Dror*, 112 F.3d 473, 478 (Fed. Cir. 1997) (residue of claim 1, without the limitations in the preamble, does not "define a structurally complete invention).

Here, Claims 1, 19, and 23 clearly describe and constitute a structurally complete invention that

4

is merely described in the preambles as a dynamic power management device.

           (b) Defendant's Construction of "Dynamic Power Management Device" as Requiring Varying Power Delivered Only to the Memory Integrated Circuit Is Without Support            .

The dynamic power management device described in the specification of the '784 Patent does not require—as Defendant posits—that the device vary only the power supplied to the memory integrated circuit. It appears that Defendant's construction is based upon its misconstruing a statement made during the response to an office action in which the prosecuting attorneys distinguished a reference that provided power conservation on a computer system-wide basis. [Dkt #168-1, p. 2]. In distinguishing this reference, the prosecuting attorneys explained that the reference did not teach a memory specific power management scheme that varied the power level supplied to a memory while Claims 1 and 23 of the '784 Patent disclosed varying the power level supplied to a memory *without **necessarily** varying* the power level supplied to the rest of the components. [Ex. B, p. 4 (emphasis added)].

Clearly, this statement does not require—as asserted in Defendant's construction—that the dynamic power management device not under any circumstances vary the power supplied to any element other than the solid state memory. Indeed, this statement merely establishes that the varying power supplied to the solid state memory need not also be supplied to other computer components.

Accordingly, Defendant's efforts to limit the construction of dynamic power management device should be rejected.

2. The "Memory Integrated Circuit" Limitation.

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 2 | memory integrated circuit (claims 1, 19, and 23)[3] | solid state memory | a memory chip |

---

[3] Also referred to as "Integrated Memory Circuit."

In the '784 Patent, the memory integrated circuit is repeatedly referred to as "solid state memory" when it is described generically in the specification. [Ex. A, Cols. 1:47-50, 3:10-59; 5:55-66]. Conversely, the phrase "memory chip" that Defendant proposes for its construction appears only in discussions of specific embodiments in which the memory integrated circuit is described as one or more dynamic random access memory ("DRAM") chips. Nowhere in the specification or prosecution history does the '784 Patent limit the memory integrated circuits to separate memory chips and, accordingly, Defendant's construction is nothing more than an improper attempt to limit a claim to a preferred embodiment that should be rejected.

3. The "Power Control Means" Limitation.

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 3 | power control means (claims 1, 19, and 23) | The parties agree that this limitation is governed by 35 U.S.C. § 112, ¶ 6, with the following function: supplying a variable voltage to the memory integrated circuit | |
| | | *Corresponding Structure:* <br> • PWM Rate Controller 27 | *Corresponding Structure:* <br> • pulse width modulation (PWM) rate controller(27); <br> • power director (29); and <br> • low pass filter (31). |

The parties have agreed that the Power Control Means Limitation is written in means-plus-function and, accordingly, is governed by 35 U.S.C. § 112, ¶ 6. The parties have also agreed that the function of this limitation is "supplying a variable voltage to the memory integrated circuit."

6

The parties disagree, however, as to whether certain additional structure disclosed in the specification is necessary to perform this function. Figure 1 of the '784 Patent, set forth below, sets forth, among other things, such structure:



[Ex. A, FIG. 1].

The parties agree that PWM Rate Controller 27 is necessary to perform the function; however, Defendant further contends that Low Pass Filter 31 and Power Director 29 are also necessary. Defendant's contentions are misplaced.

The specification unambiguously explains that "[p]ower to the solid state memory is controlled using pulse width modulation (PWM) by a PWM rate controller 27." [Ex. A, Col. 58-59]. The remainder of the structure cited by Defendant is simply not necessary to perform the function of supplying the variable voltage to the integrated circuit but, instead, only further reduces power consumption in this particular embodiment.

4. The "Logic Control Means" Limitation.

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 2 | logic control means (claims 1, 19, and 23) | The parties agree that this limitation is governed by 35 U.S.C. § 112, ¶ 6, with the following function: Generating address control signals provided to the memory integrated circuit and … controlling the power control means. | |
| | | *Corresponding Structure:* | *Corresponding Structure:* |
| | | • Binary Address Generator 21; | • Binary Address Generator 21; |
| | | • A/D Converter 33; | • Encoder 25; |

7

Plaintiff's Opening Claim Construction Brief
Case No. 3:11-cv-01509-SI

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|-----|------------|-----------------------------------|-----------------------------------|
|     |            | • Power Feedback 35; and<br>• Timing Sequence and Arbitror 37. | • Timing Sequence and Arbitror 37;<br>• Slew Rate Controllers 17, 19;<br>• Power Director 29;<br>• A/D Converter 33; and<br>• Power Feedback 35. |

The parties have agreed that the Logic Control Means Limitation is written in means-plus-function and, accordingly, is governed by 35 U.S.C. § 112, ¶ 6. The parties have also agreed that the function of this limitation is "generating address control signals provided to the memory integrated circuit and … controlling the power control means."

The parties disagree, however, as whether certain additional structure disclosed in the specification is necessary to perform this function. Figure 1 of the '784 Patent, again set forth below, sets forth such structure:



[Ex. A, FIG. 1].

The parties agree that a number of structures are necessary to perform this limitation's function—Binary Address Generator 21, A/D Converter 33, Power Feedback 35, and Timing Sequence and Arbitror 37. Defendant further contends that Encoder 25, Slew Rate Controller 17, and Slew Rate Controller 19 are also necessary. As with the Power Control Means Limitation, Defendant

8

again seeks to import structure that is not necessary to perform the function of the Logic Control Means Limitation.

It is clear that the structure set forth in FIG. 1 for generating the address control signals provided to the memory integrated circuit is Binary Address Generator 21. As set forth in the specification, the Binary Address Generator 21 generates binary addresses in response to a (i) request from the host or (ii) a refresh signal. [Ex. A, Col. 3:46-48]. It is also clear that the A/D Converter 33, Power Feedback 35, and Timing Sequence and Arbitror 37 control the PWM rate controller 27, *i.e.*, the power control means. The remaining structures identified by Defendant are not necessary to control the power control means, but instead only further decrease the power consumption of the claimed device in the preferred embodiment but, instead, further reduces power consumption in this particular embodiment.

5. The "Power Supply" Limitation.

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
| --- | --- | --- | --- |
| 5 | wherein the power control means supplies power to said memory integrated circuit | the power control means provides power to the memory integrated circuit | wherein the power control means supply power specifically to the memory integrated circuit without varying the power level or voltage supplied to the rest of the electronic system in which the device and memory integrated circuit is embedded |

The sole issue with respect to the Power Supply Limitation is whether the specification and prosecution history impose the additional requirement that the power supplied to the rest of the system not vary while the claimed device provides the variable power levels supplied to the solid state memory.

It appears that Defendant's construction—as with its proposed construction of the preamble's dynamic power management device—is based upon Defendant's misconstruing a statement made during the response to an office action in which the prosecuting attorneys distinguished a reference that provided power conservation on a computer system-wide basis. [Dkt #168-1, p. 2]. As noted with

respect to Defendant's construction of the preamble term, the prosecuting attorneys explained that the reference did not teach a memory specific power management scheme that varied the power level supplied to a memory while Claims 1 and 23 of the '784 Patent disclosed varying the power level supplied to a memory *without **necessarily** varying* the power level supplied to the rest of the components. [Ex. B, p. 4 (emphasis added)].

Clearly, this statement does not require—as asserted in Defendant's construction—that the dynamic power management device not under any circumstances vary the power supplied to any element other than the solid state memory. Indeed, this statement merely establishes that the varying power supplied to the solid state memory need not also be supplied to other computer components.

Accordingly, Defendant's efforts to limit the construction of dynamic power management device should be rejected.

6. <u>The "Variable Voltage Level" Limitation.</u>

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 6 | variable voltage level | voltage that varies during a particular period or operation | a voltage that is cycled continuously between two different voltage values |

The term "variable voltage level" as used in the '784 Patent is clear and unambiguous—voltage that varies during a particular period or operation. [Ex. A, Col. 5:25-54, FIG. 2A, FIG. 2B]. Defendants seek to impose the additional limitation that the voltage level must be cycled continuously between two different voltage values, apparently relying upon an excerpt from the file history. [Dkt #168-1, p. 23-24]. Defendant's reliance upon this excerpt is misplaced.

As with Defendant's construction of the Power Supply Limitation and the preamble, Defendant's selectively quote from the '784 Patent's file history in an effort to impose an additional limitation that is neither required by the specification nor file history. In particular, the portion of the '784 Patent's file history upon which Defendant relies states that the claimed invention discloses dynamically variable voltage levels that "vary continuously ***during transition periods***." Defendant's reliance upon this statement is misplaced. First, voltage is inherently analog and, accordingly, it

10

cannot move from a first level to a second level without going through intermediate points during which transition the voltage would vary continuously until the second level is reached.

Second, the varying voltage described in this passage is the voltage during the transition periods between the first level and second level. Figures 2a and 2b, below, illustrate the concept of voltage varying during transition periods.



[Ex. A, FIG. 2a, FIG. 2b].

As shown in these figures, above, the transition periods are the "PREPARE REFRESH" and "PREPARE STANDBY," highlighted in yellow, in which the voltage ramps up from the quiescent voltage levels to perform the refresh operation and then falls back again to the quiescent voltage levels. During these two periods, the voltage varies continuously between the quiescent voltage levels and the refresh levels. This discussion, however, neither states nor implies how the voltage levels should vary during the other periods when the solid state memory is quiescent and when the solid state memory is active, such as when a refresh is performed. Rather, the disclosure of the '784 Patent and its file history only requires that these voltages vary in some fashion during the particular period or operation.

Accordingly, Optimum Power's construction for the Variable Voltage Level Limitation should be adopted.

7. The "Variable Power Supply" Limitation.

| No. | Claim Term | Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|---|---|
| 7 | the power supplied at the first level is sufficient to preserve information… and the power supplied at the second level is sufficient to read and write information (Claims 1 and 23) | The voltage provided by the power control means to the memory integrated circuit at the first level is at a level sufficient to maintain the stored information. The voltage provided by the power control means to the memory integrated circuit is at a level sufficient to allow the reading of—and writing to—the memory integrated circuit | the power supplied at the first level is a minimal voltage sufficient to maintain memory information during periods of no data access activity, but not read and write information in the memory integrated circuit, and the power supplied at the second level is sufficient to read and write information in the memory integrated circuit |

The concept behind the Variable Power Supply limitation is a key aspect of the invention of the '784 Patent. Simply put, the dynamic power management device provides a varying voltage to the solid state memory at a first level, which is sufficient to maintain the integrity of the data in the memory during its quiescent state, and a varying voltage at a second level, which is sufficient to allow reading and writing of information to the memory. This feature is captured in the Variable Power Supply Limitation.

Defendant's construction seeks further to require that the first variable voltage be a "minimal voltage" sufficient to maintain the integrity of the data in the solid state memory. Defendant's reliance upon the specification's discussion of the operation of the embodiment utilizing DRAM to qualify the voltage as "minimal" is misplaced. As stated in the specification,

> When used in conjunction with DRAMs, the dynamic power supply device supplies power to the memory sufficient to maintain memory information during periods of no data access activity and sufficient to exchange memory information with the memory during periods of data access activity. Hence, during periods of no data activity, a minimal voltage is supplied to the memory. During periods of data access activity, a greater operational voltage is supplied to memory

[Ex. A, Col. 2:48-56]. As is evident from this passage in the specification, the terms "power … sufficient to maintain memory information" and "minimal voltage" are utilized interchangeably, albeit the latter is less descriptive, to describe the voltage provided to the solid state memory at the first level. Combining these interchangeable terms in "minimal voltage sufficient to maintain memory

12

information" adds confusion, rather than clarity, to the construction of this term. Defendant's proposal should therefore be rejected.

### III  CONCLUSION

Based upon the foregoing, this Court should adopt Optimum Power's proposed claim constructions.

Dated: March 1, 2011                                   /s/ Matthew Schultz

Matthew Schultz (SBN 220641)
TREPEL GREENFIELD SULLIVAN & DRAA LLP
150 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 283-1776
Facsimile: (415) 283-1777

AND

Bryan G. Harrison (*Pro Hac Vice*)
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
Telephone: (404) 233-7000
Facsimile: (404) 365-9532

Attorneys for Plaintiff
OPTIMUM POWER SOLUTIONS LLC